## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>Plaintiff, )<br><br>v. )<br><br>CONNECTIONS COMMUNITY<br>SUPPORT PROGRAMS, INC.,;<br>CATHERINE DEVANEY MCKAY;<br>WILLIAM NORTHEY; and STEVEN<br>DAVIS, )<br><br>Defendant(s). ) | **Civil Action No. _____**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

The United States of America ("United States"), for its complaint, alleges as follows:

## INTRODUCTION

1.      On or about March 4, 2019, the Drug Enforcement Administration ("DEA") conducted an inspection and audit at the Millsboro location of Connections Community Support Programs, Inc. ("Connections").

2.      During the inspection, DEA investigators examined the records of Connections' inventory of controlled substances for the period March 1, 2018 to March 4, 2019, records that Connections was required by law to maintain accurately for all controlled substances it received, delivered, or dispensed.

3.      The records at the Millsboro location were woefully incomplete.  Indeed, based on DEA's review of Connections' records, more than 2.4 million milligrams of methadone – a schedule II controlled substance, in the same category as  oxycodone or morphine – could not be

accounted for.  These were substances that Connections acknowledged it had received in Millsboro but could not determine whether they had been dispensed, delivered to another location, or were lost or stolen.

4.     The March 4, 2019 audit was hardly the first time that Connections had failed to maintain proper records of its controlled substances.  Indeed, in March 2017, after an administrative hearing at DEA's Philadelphia Field Division, Connections had entered into a Memorandum of Agreement with DEA, acknowledging its repeated past compliance failures and agreeing to implement measures designed to ensure its ongoing compliance with DEA regulations.

5.     As a result of the March 4, 2019 audit, DEA and the United States Attorney's Office undertook a comprehensive review of controlled substance compliance at all of Connections' locations throughout Delaware.  That investigation identified a host of violations: hundreds of bottles of controlled substances that had been transferred between sites without proper documentation, dozens of forms that were incomplete or improperly filled out, and numerous audits that had failed to properly account for all controlled substances.

6.     Connections' internal communications showed a CSA compliance program that was haphazard and reactive at best, addressing issues only when it could no longer ignore them. Senior management delegated compliance responsibilities to unqualified individuals.  Staff were inadequately trained and were frequently unclear on their compliance obligations.  Required documents were created after the fact and backdated.

7.     The strict regulations governing the handling of controlled substances are the primary tool that DEA has to prevent these potentially dangerous drugs from being diverted for abuse or sale on the street.

8.      By failing to accurately account for the large volumes of controlled substances it received and dispensed, Connections and the corporate officers responsible for its compliance placed patients, staff, and the general public at increased risk and undermined DEA's efforts to halt the diversion of dangerous prescription drugs.

9.      By negligently failing to comply with statutory and regulatory requirements, as discussed below, each of the Defendants violated the Controlled Substances Act and each of them is subject to civil penalties.

## JURISDICTION AND VENUE

10.     This is an action by the United States for civil penalties for violations of the Comprehensive Drug Abuse Prevention Control Act of 1970 ("Controlled Substances Act" or "CSA"), 21 U.S.C. §§ 801, *et seq.*

11.     This Court has jurisdiction over the claims in this action pursuant to 21 U.S.C. § 842(c)(1)(A) and 28 U.S.C. §§ 1331, 1345, and 1355(a).

12.     Venue in this District is proper pursuant to 28 U.S.C. §§ 1391(b)(2) and 1395 because a substantial part of the events and omissions giving rise to the claim occurred within this District and because one or more defendants can be found in this District.

## PARTIES

13.     Plaintiff is the United States of America, on behalf of the United States Drug Enforcement Administration.  The DEA is an agency within the United States Department of Justice and is responsible for enforcing the provisions of the CSA.

14.     Connections is a Delaware non-profit corporation with a primary place of business at 3821 Lancaster Pike, Wilmington, DE, 19805.

15.    Connections is, *inter alia*, one of the largest providers of substance abuse treatment services in Delaware.

16.    Among the substance abuse treatment services that Connections provides is medication assisted treatment ("MAT"), in which medications are used in combination with counseling and behavioral therapies to treat substance use disorders.

17.    As part of its MAT program, Connections distributes medications, including the controlled substances buprenorphine (sold under the brand names Subutex and Suboxone) and methadone, to patients suffering from opioid use disorder.

18.    Catherine Devaney McKay ("McKay") served as Chief Executive Officer ("CEO") of Connections from its founding in 1985 until September 30, 2019.

19.    William Northey ("Northey") has served as CEO of Connections from October 1, 2019 through the present.  Prior to becoming CEO, Northey served as Chief Operating Officer ("COO").

20.    Steven Davis ("Davis") has served as Chief Compliance Officer ("CCO") and General Counsel of Connections since 2009.

21.    McKay, Northey, and Davis are referred to herein as the "Officer Defendants."

## THE CONTROLLED SUBSTANCES ACT

22.    The CSA regulates all handling of controlled substances and makes it unlawful for any person to knowingly or intentionally manufacture, distribute, or dispense any controlled substance except as authorized by provisions of the Act itself.  21 U.S.C. § 841(a)(1).

23.    The Attorney General is authorized "to promulgate rules and regulations and to charge reasonable fees relating to the registration and control of the manufacture, distribution, and dispensing of controlled substances."  21 U.S.C. § 821.

4

24.     Pursuant to the CSA, "[e]very person who manufactures or distributes any controlled substance" and "[e]very person who dispenses, or who proposes to dispense, any controlled substance" is required to obtain a registration from the Attorney General.  21 U.S.C. § 822(a)(1)–(2).

25.     The Attorney General has delegated responsibility for registrations under the CSA, as well as certain activities related to CSA enforcement, to the Drug Enforcement Administration ("DEA").

26.     The CSA sets forth both criminal and civil penalties for those who violate its provisions.  21 U.S.C. §§ 841–865.

27.     Among other prohibitions, the CSA makes it unlawful for any person – either a corporation or an individual – "to refuse or negligently fail to make, keep, or furnish any record, report, notification, declaration, order or order form, statement, invoice, or information required" under the CSA.  21 U.S.C. § 842(a)(5).

28.     The CSA likewise makes it unlawful for any person to "negligently to fail to keep a record or make a report under [21 U.S.C. § 830]," 21 U.S.C. § 842(a)(10), which requires reporting of various activities including theft or loss of a controlled substance.  *See also* 21 C.F.R. § 1301.76(b).

29.     Thus, any person who negligently acts or fails to act with respect to recordkeeping requirements under the CSA is potentially liable for any recordkeeping violations resulting from that negligence.

30.     The CSA also prohibits any distribution of a controlled substance in schedule I or II "except in pursuance of a written order of the person to whom such substance is distributed, made on a form to be issued by the Attorney General" and authorizes the Attorney General to

promulgate regulations regarding the transfer of schedule I and II controlled substances.  21
U.S.C. § 828(a).

## CONNECTIONS' ACTIVITIES UNDER THE CSA

31.    Connections provides MAT services at multiple locations throughout the state of
Delaware.

32.    Because Connections distributes and/or dispenses controlled substances as part of
its MAT activities, each of Connections' MAT locations is required to maintain a registration
from the DEA.

33.    All of Connections' distribution or dispensing of controlled substances as part of
its MAT program is required to comply with the CSA and the regulations promulgated
thereunder.

34.    Because methadone, one of the drugs Connections uses in its MAT program, is a
schedule II controlled substance, Connections' distribution and dispensing of methadone is also
required to comply with the specific requirements applicable to schedule I and II controlled
substances under 21 U.S.C. § 828(a).

## RECORDKEEPING REQUIREMENTS

35.    The regulations promulgated by DEA pursuant to the CSA impose numerous
recordkeeping requirements on CSA registrants.

36.    Every registrant must maintain "a complete and accurate record of each substance
manufactured, imported, received, sold, delivered, exported, or otherwise disposed of by
him/her."  21 C.F.R. § 1304.21(a).

37.    In addition, a registrant must make a complete and accurate inventory of
controlled substances before engaging in the manufacture, distribution, or dispensing of

controlled substances and must take an inventory every two years thereafter.  21 U.S.C. § 827(a).

Such inventories must be kept available for at least two years for inspection and copying by

DEA.  *Id.* § 827(b).

38.     There are additional requirements that attach to schedule II controlled substances.

39.     With limited exceptions not applicable here, any transfer of a schedule II

controlled substance must be accompanied by a properly executed DEA Form 222 or its

electronic equivalent.  21 C.F.R. § 1305.03.

40.     The regulations provide detailed instructions for obtaining, executing, and

preserving Forms 222 as well as proper handling for lost and defective forms.  21 C.F.R.

§§ 1305.11–1305.20.

41.     All Forms 222 – including any unaccepted or defective forms – must be

maintained by the registrant and kept available for inspection by DEA for at least two years.  21

C.F.R. § 1305.17(c).

42.     Registrants are instructed that Forms 222, which are issued by DEA to a specific

registrant and are individually numbered, should be treated with the same level of security as the

prescription pads used by physicians.

43.     Because accurate recordkeeping is necessary to permit DEA to track the

distribution of controlled substances and prevent their illegal spread, each violation of these

recordkeeping requirements is subject to a civil penalty of up to $15,040.  21 U.S.C.

§ 842(c)(1)(B)(i); 28 C.F.R. § 85.5.

## INSPECTIONS AND AUDITS

44.     As part of its registration and enforcement responsibilities with respect to the

CSA, DEA periodically conducts inspections of registrants, including each of Connections'

MAT locations, to ensure that regulations are being followed and that required documentation is maintained.

45.     As part of that inspection process, DEA may conduct an audit to ensure that the registrant can account for all of the controlled substances it has received.  Such an audit compares the amounts of controlled substances received to the amounts dispensed or transferred and the inventory on hand to verify that no controlled substances have been lost, stolen, or diverted.

46.     During the inspection and audit process, DEA diversion investigators ensure that the registrant is creating and maintaining proper documentation to track its controlled substance inventory.  When a discrepancy or violation is identified, DEA may issue a letter of admonition ("LOA"), informing the registrant of the violation and requesting documentation that it has been resolved, or may take a wide variety of other enforcement actions, up to and including suspending or revoking the registrant's license.

## SPECIFIC VIOLATIONS FOUND DURING DEA INSPECTIONS

47.     During the relevant time period, DEA diversion investigators at Connections locations have identified and reported numerous violations of the applicable recordkeeping and reporting requirements.

48.     On or about February 24, 2015, DEA issued an LOA to Connections with respect to an inspection at the Dover location.  In that LOA, DEA identified a Form 222 that did not contain required information.  The LOA also identified occasions on which Connections had transferred methadone from one location to another using an incorrect Form 222 and had used a Form 222 for one location to order controlled substances for another location.  All of these were violations of the regulations pertaining to the handling of controlled substances.

49.     In a March 23, 2015 response to the LOA, Connections acknowledged the violations and explained the steps that it had taken to correct them.

50.     On or about June 22, 2016, DEA conducted an inspection at Connections' Millsboro location.  During the inspection, DEA identified 14 recordkeeping violations including 3 DEA Forms 222 that were missing the date received and 3 DEA Forms 222 that were missing the number of containers shipped and the date shipped.

51.     As a result of the 2016 violations and prior violations at the Millsboro location that were the subjects of LOAs sent in 2013 and 2015, DEA issued a Notice of Hearing to Connections.  Connections' Director of Nursing, Deborah Pringle ("Pringle"), appeared for an informal hearing at DEA's offices on March 29, 2017.

52.     During her time as Director of Nursing, Pringle was the primary point of contact for DEA at Connections and handled most communications and interactions between DEA and Connections.

53.     After the hearing, Connections entered into a Memorandum of Agreement (the "MOA") with DEA.  Pringle sign the MOA on Connections' behalf.

54.     Under the MOA, Connections agreed to numerous specific compliance protocols at the Millsboro location for a three-year period from July 26, 2017 through July 25, 2020. Connections also represented that those same compliance practices would be implemented at other Connections locations.

55.     Notwithstanding its history of violations and its representations in the MOA, however, DEA diversion investigators continued to regularly identify violations at Connections locations.

56.     On or about August 11, 2017 – less than month after the MOA was signed – DEA issued an LOA to Connections at its Smyrna location, identifying seven specific Forms 222 that were missing required information.  On or about August 28, 2017, Connections responded, acknowledging the violations and identifying protocols and additional training that had been put in place to ensure that Forms 222 were properly completed.

57.     On or about September 27, 2018, DEA issued an LOA to Connections at its Dover location, noting that an audit of that location had identified significant overages of Subutex tablets, which were attributed to inaccurate recordkeeping by staff.  Specifically, the audit found a discrepancy of 85 Subutex 2mg tablets and 93 Subutex 8mg tablets.

58.     On November 30, 2018, DEA conducted an inspection at Connections' Newark location.  During the inspection, DEA identified eleven Forms 222 that were missing required information.  A few days later, DEA conducted a test of the alarm system at the Newark location, which was determined not be working properly, in violation of 21 C.F.R. § 1301.72(a)(1)(iii).

59.     After the Newark audit, the nurse manager for that location wrote in an email to Pringle that she felt "humiliated" during the audit because she was not aware that the procedures that she and her nurses were following were not compliant.  The nurse manager stated that she had never been trained on proper Form 222 documentation and did not understand why, if other Connections locations had already been cited for the same issues, she had not been made aware of the requirements.

60.     On January 10, 2019, DEA visited Connections' administrative offices to express concern about the discrepancies found in the September 2018 Dover audit and subsequent interactions with Pringle.

10

61.     On February 8, 2019, Connections sent a letter to DEA, stating that Pringle had been terminated and identifying new procedures that had been put in place to ensure accurate inventory and recordkeeping going forward.

62.     Among the actions that was promised was that if, at any step of the process of reviewing and reconciling its controlled substance inventory, the responsible Connections staff "was unable to discover the cause of the discrepancy and resolve it, an investigation will be initiated with applicable reporting as required to DEA."

## THE 2019 MILLSBORO AUDIT

63.     Against this backdrop of prior violations, and while Connections remained subject to the terms of the MOA, DEA diversion investigators conducted an inspection and audit at the Millsboro location beginning on March 4, 2019, less than a month after Connections' letter setting forth the new compliance procedures it had supposedly put in place.

64.     During the March 2019 inspection at Millsboro, as in numerous prior inspections, DEA identified Forms 222 that were incomplete or improperly completed, improper records of internal transfers of controlled substances, and incorrect receiving invoices.

65.     Of most concern, however, the diversion investigators found large quantities of controlled substances that could not be accounted for.  Based on their review of the documents maintained and provided by Connections, the methadone inventory at the Millsboro location was short by more than 2.4 million milligrams of methadone, which represented more than 244 missing bottles of methadone liquid.

66.     The missing methadone accounted for more than 14% of the total amount received by the Millsboro location in the prior 12 months.

67.     The audit also found significant numbers of buprenorphine tablets that were similarly unaccounted for:  1,139 missing tablets of the 2mg dosage and 51 missing tablets of the 8mg dosage.

68.     Over the next 10 days, DEA diversion investigators continued to communicate with staff at the Connections Millsboro location to see if they could explain the missing controlled substances.  The staff were unable to determine where the missing substances were located or to explain the discrepancies identified by the DEA diversion investigators.

69.     On March 14, 2019, a Connections employee responsible for the Millsboro location reported to her management that the DEA audit had found large quantities of missing methadone.

70.     Notwithstanding Connections' promise, made only a month earlier, to investigate and report to DEA regarding any unexplained discrepancy, Connections conducted no detailed investigation of this unexplained discrepancy and made no further report to DEA.

71.     On October 18, 2019, the United States Attorney's Office contacted Connections management to inform them that the government had opened an investigation into the unexplained discrepancies from the Millsboro audit.

72.     Still, Connections completed no investigation regarding the fact that more than 244 bottles of methadone and more than 1,100 tablets of buprenorphine could not be located.

73.     Indeed, for more than a year after the missing controlled substances were first identified, Connections was unable to offer any explanation to DEA or to the United States regarding its understanding of the cause of the discrepancy.

74.     The recordkeeping requirements for controlled substances are designed to ensure that, at any given moment, a registrant can account for and locate all of the controlled substances

it has on hand.  Such records, if properly kept, allow a registrant to rapidly determine if controlled substances are being stolen or diverted and to take steps to stop any such theft or diversion.

75.     Notwithstanding these recordkeeping requirements, Connections was, for more than a year, unable to determine with certainty what had become of more than 244 bottles of methadone and more than 1,100 buprenorphine tablets.

## OTHER VIOLATIONS

76.     In addition to the violations specifically identified during inspections and audits, Connections failed in numerous other respects to maintain the required records and inventories for their controlled substances.

77.     In addition to the improperly completed Forms 222 identified in the audits discussed above, Connections engaged in other recordkeeping violations of similar description that were not identified in DEA audits.

78.     By way of example, on December 4, 2018, a Connections nurse manager noted that there were discrepancies with how nurses were recording the controlled substances received from suppliers on the Forms 222 and the picking tickets.

79.     Connections also failed to properly maintain all defective Forms 222 and Forms 222 that were rejected by its suppliers, as required by applicable regulations.

80.     Because each of Connections' MAT locations is separately registered, the Forms 222 that Connections obtains from DEA are not interchangeable.  Connections was aware that it needed to use a Form 222 from the proper location for each order of schedule II controlled substances.

81.   Notwithstanding this requirement, Connections, on numerous occasions, used a Form 222 from one location to order controlled substances for another location.

82.   In addition, Connections would regularly transfer controlled substances between locations without proper documentation, including Forms 222 where required.  This resulted in an inability for DEA or Connections to properly account for all controlled substances at any given time and made it impossible for Connections to ensure that no diversion, loss, or theft of controlled substances had occurred.

83.   Despite numerous violations identified in DEA inspections with respect to these inter-site transfers over a period of many years, Connections continued to make such transfers – often without proper documentation – until at least February 28, 2019.

84.   Even where Connections maintained a Form 222 for a transfer of controlled substances from one site to another, personnel responsible for maintaining proper documentation would sometimes fill out and sign the forms after the transfer was complete and backdate them to the day on which the transfer occurred.

85.   By way of example, on September 13, 2018 and September 18, 2018, methadone was transferred from Connections' Dover location to both the Seaford and Millsboro locations. On October 4, 2018, staff requested that Pringle create Forms 222 to document the transfers.

86.   On other occasions, Connections would determine, prior to a DEA audit, that it had failed to create a required initial or biennial inventory and would create that documentation after the fact and backdate it to the day on which the inventory should have been completed.

87.   By way of example, on or about June 27, 2017, Connections created an initial inventory document for the Smyrna location that was dated April 12, 2016.  Pringle requested that another employee sign the backdated inventory as a "witness."

14

88.     Connections maintains two facilities in Harrington, Delaware, a clinic facility and a withdrawal management facility.  Those facilities are separately registered with and licensed by DEA.

89.     In May 2017, Connections discovered that its withdrawal management facility had been ordering methadone and buprenorphine using the license and registration of the clinic facility.  This error resulted in regular, undocumented transfers of controlled substances between the two Harrington facilities in violation of the recordkeeping requirements of the CSA.

90.     On or about May 15, 2017, Connections discovered that one of its employees had been stealing methadone.  Although DEA regulations require any significant loss or theft to be reported within one business day, 21 C.F.R. § 130.76(b), Connections did not report the theft until June 2, 2017, on a form electronically signed by McKay.

91.     In McKay's submission to DEA regarding the theft, Connections represented to DEA that it was implementing increased security measures, including increased monitoring of security camera footage and random and monthly inventory audits.  Upon information and belief, these enhanced security measures were never actually implemented.

92.     Connections used a computer system called Methasoft to track its inventory of controlled substances.  During DEA audits, Connections would provide diversion investigators with reports from the Methasoft system to show the quantities of controlled substances that it had dispensed and the quantities that it had in inventory.

93.     Even when Connections knew, however, that its Methasoft inventory was inaccurate, it failed to promptly take steps to correct it.  Indeed, during a discussion in March 2019 regarding how waste was accounted for when switching from an empty bottle to a full one, McKay expressed her belief that "this has been a problem from the beginning."

94.     In June of 2018, Connections staff discussed a bottle of methadone that had been present in the safe at Smyrna for nearly a year and was not included in the Methasoft inventory. When concern was raised about the bottle needing to be used or destroyed before the next DEA audit, staff were told to add it to the Methasoft inventory.  No attempt was made to locate a Form 222 or any other documentation regarding this bottle.

95.     On July 13, 2018, a bottle of methadone at the Harrington location became contaminated and was removed from the Methasoft inventory.  The bottle remained in the safe at Harrington, unaccounted for in any inventory, for more than six months until it was ultimately destroyed on January 28, 2019.

96.     On or about December 6, 2018, Connections conducted an internal mock audit of its Seaford location.  During that audit, Connections staff were unable to account for 24 missing bottles of Subutex.  The internal audit also noted that reconciliation records in Methasoft and medication error reports were not being properly completed.

97.     On January 21, 2019, the nursing manager of the Seaford location, who had participated in the mock audit, stated that she was still unaware of any resolution to the issue with missing medication at the Seaford location.

## RESPONSIBILITIES OF THE OFFICER DEFENDANTS

98.     Each of the Officer Defendants was responsible for and had a duty to ensure that the recordkeeping and reporting requirements of the CSA and its enabling regulations were followed.

99.     In her role as CEO, McKay was directly involved in assessing and responding to violations identified by DEA during inspections and audits.  Moreover, as CEO, McKay had ultimate responsibility for ensuring that Connections complied with all applicable DEA rules and

16

regulations.  She failed to do so.  More specifically, McKay failed to ensure that there was adequate supervision, training, or delegation of responsibility for complying with applicable DEA rules and regulations.  And she failed to do so despite having personal knowledge of Connections' failure to properly keep, document, and store controlled substances in accordance with applicable DEA rules and regulations.

100.    During the period when Pringle was Director of Nursing, Pringle reported directly to McKay.  Although Pringle handled most communication with DEA regarding compliance issues, McKay participated directly in some discussions with DEA, including a discussion in May 2017 about Connections' handling of take-home doses of controlled substances for certain patients.

101.    As Pringle's supervisor, McKay failed to monitor Pringle's activities to ensure that Pringle's handling of compliance issues was adequate and competent.  McKay likewise knew that Pringle lacked the necessary training, knowledge, and ability to direct Connections' compliance with DEA controlled substance regulations.

102.    In his role as COO, Northey was charged with "ensur[ing] the maintenance of clinical records and compliance with all applicable federal, state, and local laws, standards, requirements and regulations, including those related to program licensure, certification, and/or accreditation."  Northey failed to do so.  More specifically, Northey failed to ensure that there was adequate supervision, training, or delegation of responsibility for complying with applicable DEA rules and regulations.  And he failed to do so despite having personal knowledge of Connections' failure to properly keep, document, and store controlled substances in accordance with applicable DEA rules and regulations.

103.    Northey and McKay also both served as administrators of the Methasoft system.

104.    As CCO, Davis was charged by the Board of Directors with the responsibility of overseeing all aspects of Connections' regulatory and legal compliance including, without limitation, compliance with the CSA and regulations promulgated thereunder.  Davis failed to do so.  More specifically, Davis failed to ensure that there was adequate supervision, training, or delegation of responsibility for complying with applicable DEA rules and regulations.  And he failed to do so despite having personal knowledge of Connections' failure to properly keep, document, and store controlled substances in accordance with applicable DEA rules and regulations.

105.    As officers of Connections, each of the Officer Defendants owed a duty of care to the corporation to make informed decisions and a duty of loyalty to act in the best interest of the corporation.

106.    Because Connections' MAT program required it to maintain active DEA licenses and registrations for each its locations, the Officer Defendants knew that strict compliance with DEA regulations regarding controlled substances was imperative to the successful operation of Connections.

107.    Notwithstanding this knowledge of the importance of compliance, the Officer Defendants negligently delegated responsibility for DEA compliance to employees that they knew were unqualified and unable to handle such responsibilities effectively.  Indeed, at one point, McKay referred to one of those employees in an email as "completely chaotic," an assessment that made that employee uniquely unsuited to an important role in regulatory compliance.

108.    The Officer Defendants negligently failed to conduct the necessary investigation to allow them to make informed decisions regarding Connections' compliance with the CSA.

18

109.     The Officer Defendants negligently failed to adequately supervise the employees who had responsibility for compliance with controlled substance regulations.

110.     The Officer Defendants negligently failed to adequately train the employees who had responsibility for compliance with controlled substance regulations.

111.     After Connections entered into the MOA and made other post-inspection commitments to modify its compliance practices, the Officer Defendants negligently failed to monitor Connections' compliance with those commitments, putting Connections' controlled substance license and registration – and, by extension, its entire MAT program – at risk.

112.     As a result, each of the Officer Defendants negligently failed to make, keep, or furnish records, reports, notifications, declarations, orders or order forms, statements, invoices, and/or information required under the CSA in violation of 21 U.S.C. § 842(a)(5) and (a)(10).

### Count I
### Violations of 21 U.S.C. §§ 842(a)(5) and 842(c)(1)(B)(i)

113.     The United States repeats and re-alleges each of the foregoing paragraphs.

114.     Pursuant to the provisions of the CSA and the regulations promulgated thereunder, Connections was required to make, keep, and furnish records, reports, notifications, declarations, orders or order forms, statements, invoices, and other information.

115.     Each of the Officer Defendants was responsible for and had a duty to ensure that these records, reports, notifications, declarations, orders or order forms, statements, invoices, and other information were kept.

116.     Defendants failed to make, keep, and furnish the required records, reports, notifications, declarations, orders or order forms, statements, invoices, and other information.

117.     Such failure was negligent as to each Defendant.

118.    As a result, Defendants are each liable, jointly and severally, to the United States for a civil penalty for each violation in an amount not to exceed $15,040.

## Count II
### Violations of 21 U.S.C. §§ 842(a)(10) and 842(c)(1)(B)(i)

119.    The United States repeats and re-alleges each of the foregoing paragraphs.

120.    Pursuant to 21 U.S.C. § 830 and the regulations promulgated thereunder, Connections was required to provide various reports to the Attorney General, including without limitation reports of the theft of significant loss of any controlled substance.

121.    Each of the Officer Defendants was responsible for and had a duty to ensure that these reports, were provided as required.

122.    Connections failed to make such reports in accordance with the applicable statutory and regulatory requirements.

123.    Such failure was negligent as to each Defendant.

124.    As a result, Defendants are each liable, jointly and severally, to the United States for a civil penalty for each violation in an amount not to exceed $15,040.

## **PRAYER FOR RELIEF**

WHEREFORE,  the United States respectfully requests judgment to be entered in its

favor and against all Defendants, jointly and severally, as follows:

A.  Civil penalties of $15,040 for each violation; and

B.  Such further relief as the Court may deem proper.


Respectfully submitted,

DAVID C. WEISS
United States Attorney


By:  /s/ Dylan J. Steinberg
Dylan J. Steinberg
Laura D. Hatcher
Assistant United States Attorneys
1313 N. Market Street
P.O. Box 2046
Wilmington, DE 19899-2046
(302) 573-6277

Dated: April 9, 2021                    *Attorneys for the United States of America*